UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

|  |  |
|---|---|
| **MICROPOWER GROUP AND ECOTEC LTD., LLC** | CASE NO. 3:12-cv-331 |
| *Plaintiffs,* | **JUDGE THOMAS M. ROSE** |
| v. |  |
| **AMETEK, INC.** |  |
| *Defendants* |  |

**ENTRY AND ORDER GRANTING DEFENDANT AMETEK, INC'S MOTION TO DISMISS (Doc. #7) AND DENYING DEFENDANT AMETEK, INC'S MOTION FOR SANCTIONS (Doc. #10)**

Pending before the Court is Defendant Ametek, Inc.'s (hereinafter "Defendant" or "Ametek") Motion to Dismiss Amended Complaint (Doc. 7.) and Defendant's Motion for Rule 11 Sanctions (Doc. 10.). In the Motion to Dismiss, Defendant asserts that Plaintiff Ecotec LTD., LLC's (hereinafter "Ecotec") claim should be dismissed as barred by res judicata and that Plaintiff Micropower Group's (hereinafter "Micropower") claims should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). In the Motion for Rule 11 Sanctions, Defendant moves for sanctions asserting that Plaintiffs' claims are frivolous, being legally and factually unfounded. Defendant also asserts that the recovery of attorney's fees is appropriate under Ohio Rev. Code § 1333.64 because the Plaintiffs made a trade secret claim in bad faith.

1

This case is before the Court pursuant to 28 U.S.C. § 1332. Plaintiff Micropower brings eight claims against Defendant alleging that Defendant copied the design of Micropower's charger (ECLIPSE I), misled Micropower in their business interactions, and interfered with Plaintiffs' business relations: (1) Breach of the Duty of Good Faith; (2) Intentional Misrepresentation; (3) Negligent Misrepresentation; (4) Fraud; (5) Tortious Interference with Business Relations; (6) Tortious Interference with Prospective Business Relations; (7) Misappropriation of Trade Secrets in Violation of O.R.C. § 1333.61, *et seq.*; and (8) Conversion. Plaintiff Ecotec joins Micropower in asserting the sixth claim, Tortious Interference with Potential Business Relations. Defendant asserts that Micropower's Amended Complaint has failed to state a claim upon which relief can be granted. Defendant asserts that Ecotec's claim should be dismissed as barred by res judicata because Ecotec already brought this claim, among others, against Ametek in an Ohio state court and failed. *Ametek v. Keyser, et al*. (Doc. 7-3.)

Because a valid contract exists between Micropower and Defendant with a forum-selection clause designating the federal or state courts of Pennsylvania to be the exclusive forum for the adjudication of any disputes, Defendant's motion to dismiss Micropower's claims via Fed. R. Civ. P. 12(b)(6) will be granted. Because Ecotec's claim of Tortious Interference with Potential Business Relations has already been entertained and dismissed by another court, Defendant's motion to dismiss Ecotec's claim as barred by res judicata will be granted. Because Plaintiffs' claims are not frivolous, Defendant's Motion for Rule 11 Sanctions will be denied.

## I. Factual Background

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *California*

*Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972). According to the Amended Complaint, Micropower is a multinational manufacturer of conventional and high-frequency chargers, incorporated in Sweden. (Am. Compl. ¶ 1, 3.) Ecotec, headquartered in Piqua, Ohio, is a wholly-owned subsidiary of Micropower which distributes Micropower's products in North America. (*Id.*) Defendant Ametek, a global electronic manufacturer, is incorporated in Delaware with its principal place of business being Pennsylvania. (*Id.* at ¶ 2, 3.) Defendant's Prestolite Power Division, the division which manufactures and markets battery chargers, is based in Columbus, Ohio. (*Id.* at ¶ 2.)

In 2003/2004, Micropower and Ametek entered into a business relationship in which Ametek would distribute and sell Micropower's high frequency chargers, including the ECLIPSE I, in the United States. (*Id.* at ¶ 9-11.) This business relationship was defined by a series of Purchase Orders (Doc. 7-5.) by which Defendant purchased the chargers from Micropower. (Doc. 7-1. at 19.) Plaintiffs allege that Ametek profited from selling the Micropower chargers and determined to copy the Micropower charger and manufacture their own. (Am. Compl. ¶ 11-12.)

Beginning in 2010, Ametek allegedly used its access to Micropower's confidential information and trade secrets in order to more rapidly develop its own charger, the ECLIPSE II. (*Id.* at ¶ 13, 16, 17.) Plaintiffs allege that Ametek, instead of disclosing its plan, sought to mislead Micropower by promising purchases of larger volumes and insisting on a shorter delivery time in order to weaken Micropower's competitiveness against Ametek's forthcoming, copied product. (*Id.* at ¶ 13-14.) Ametek waited until after it had successfully manufactured its own charger to inform Micropower that it would be terminating its business relationship with Micropower in order to sell its own chargers in competition with Micropower. (*Id.* at ¶ 18.)

Micropower then incorporated Plaintiff Ecotec in order to sell Micropower's charger and other products in the United States.  (*Id.* at ¶ 20.)  Ametek, now in competition with Ecotec, told Ecotec's prospective customers that it should not do business with Micropower and Ecotec.  (*Id.* at ¶ 45.)

In a case in an Ohio Court of Common Pleas, between Ametek (as plaintiff) and Ecotec (as a defendant), Ecotec brought the same claims alleged here as counterclaims against Ametek.  The Ohio court dismissed the claims for failure to state a claim upon which relief could be granted because Ecotec did not have a contractual relationship with Ametek and Ecotec could not bring the claims on behalf of Micropower.  (Doc. 7-3. 4.)  The Ohio court opined, however, that Micropower could bring the claims on its own behalf in a separate litigation.  *Id.*

## II.  Legal Standard

The purpose of a motion under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint.  The Court is mindful that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, the court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) public documents, and (3) matters of which a court may properly take notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Instead of enforcing forum-selection clauses via a Rule 12(b)(3) motion to dismiss for improper venue, as the Defendant seems to suggest, the Sixth Circuit handles forum-selection clauses as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *See Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 369 (6th Cir. 2008).

**III. Analysis**

Defendant's Motion to Dismiss (Doc. 7.) asserts that Micropower's claims should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). It also asserts that Ecotec's claim should be dismissed as barred by res judicata. Defendant's Motion for Rule 11 Sanctions asserts that the Court should impose sanctions because Plaintiffs' claims are frivolous, being legally and factually unfounded. The Court will examine each of them in turn.

**A.  Micropower's failure to state a claim as a result of the forum-selection clause**

Forum-selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). While the Supreme Court in *Bremen* developed this doctrine within admiralty law, it has since been applied to forum-selection clauses in diversity cases. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007). Nevertheless, a court will not enforce a forum-selection clause if doing so would contravene a strong state public policy or the chosen forum is seriously inconvenient to the extent that it would deprive a party of its day in court. *Bremen*, 407 U.S. at 15, 18-19.

In order to determine if the forum-selection clause dictates that the case be dismissed, the Court first has to determine if the Purchase Order (Doc. 7-5.) amounts to a valid contract between Micropower and Ametek. Then, the Court must determine if the clause is unenforceable because litigation in Pennsylvania would be against a strong Ohio public policy or deprive Micropower of its day in court. Lastly, the Court must determine if the tort claims asserted by Micropower fall within the purview of the forum-selection clause so as to be governed by it.

5

1. **Purchase Order**

As a preliminary matter, the Court must first determine whether the Purchase Order can be considered by the Court when deciding the Rule 12(b)(6) motion. In addition to the complaint, when deciding a Rule 12(b)(6) motion, the Court may consider (1) documents referenced in the pleadings and central to plaintiff's claims, (2) public documents, and (3) matters of which a court may properly take notice. *Tellabs*, 551 U.S. at 322. Micropower asserts a claim of Breach of the Duty of Good Faith against Ametek. In Ohio, a claim of Breach of the Duty of Good Faith cannot exist without a contract between the parties. *See, e.g., Lakora Local Sch. Dist. Bd. of Educ. v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996); *Ireton v. JTD Realty Invs., L.L.C.*, 162 Ohio Misc. 2d 1, 22 (Ohio Ct. C.P. 2010). The Purchase Orders (which are the only contracts between the two parties (Doc. 7-5. 5. ¶ 1.)) are referred to by the complaint and central to the Good Faith claim. Therefore, it is proper for the Court to consider the Purchase Order (Doc. 7-5.) when ruling on the Rule 12(b)(6) motion.

A second preliminary question is whether or not the Purchase Order amounts to a valid contract. The first paragraph of the terms and conditions within the Purchase Order states that "This order shall be deemed accepted and shall become a binding contract on the terms and conditions contained herein when…(D) seller commences performance." (Doc. 7-5. 5. ¶ 1.) (emphasis deleted). The seller, Micropower, sent the chargers to Ametek. Therefore, there was a binding contract between the two parties. In accord with the *Bremen* standard, the forum-selection clause within that contract (Doc. 7-5. 5. ¶ 28.) is prima facie valid and should be enforced unless it would be unreasonable or unjust. *Bremen*, 407 U.S. at 10. The burden to show that a forum-selection clause would be unreasonable or unjust lies on the resisting party.

Micropower has put forth no such argument.  Ergo, the forum-selection clause is valid and should be enforced, unless it is unenforceable for another reason.

## 2. Unenforceability

In a case before a federal court pursuant to diversity jurisdiction, when the clause is not raised as the basis for personal jurisdiction over one of the parties, the enforceability of a forum-selection clause is governed by federal law.  *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009).  A forum-selection clause will be held unenforceable if its enforcement would contravene a strong state public policy or the chosen forum is seriously inconvenient to the extent that it would deprive a party of its day in court.  *Bremen*, 407 U.S. at 15, 18-19.  Micropower has raised no argument that a strong state public policy would be contravened by the clause's enforcement.  Nor has Micropower alleged that the clause's enforcement would deprive Micropower of its day in court.  Consequently, this Court finds that the forum-selection clause is enforceable.

## 3. Applicability of forum selection clause to tort claims

Plaintiff Micropower argues that the forum-selection clause should not be applied to their tort claims because the clause only governs claims related to the Purchase Order and because the tort claims exist independent of the Purchase Order.  (Doc. 8. 16-18.)  Micropower's first argument relies on the language of the clause.  Instead of containing two separate sections to designate choice of law and choice of forum, Ametek's Purchase Order groups both sentences together in the same paragraph:  "28…Irrespective of the place of performance, this Order shall be construed and interpreted according to the Laws of the Commonwealth of Pennsylvania.  The exclusive forum for adjudication of any disputes shall be the federal or state courts of the Commonwealth of Pennsylvania…"  (Doc. 7-5. 5. ¶ 28.)

7

Despite placing both sentences within the same paragraph, it is clear that the first sentence designates the choice of law and the second, the choice of forum. Micropower asserts that the words "this Order" in the choice of law sentence show that the terms of the Purchase Order were only intended to control disputes over defects in the products or their delivery. Nevertheless, while the choice of law sentence is narrow in that sense, only providing for the choice of law regarding disputes about the purchases, the language in the choice of forum sentence is very broad. The choice of forum sentence specifically provides that "any disputes" shall be adjudicated in Pennsylvania.

Micropower suggests that the Court should interpret these sentences with the rule of *ejusdem generis* in mind and view the latter sentence as restricted by the former. (Doc. 8. 16-17.) The rule of *ejusdem generis* is "[a] canon of construction holding that when a **general** word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." Black's Law Dictionary 594 (9th ed. 2009) (emphasis added). As stated in the definition, the rule is only to be applied to general words whose meaning is uncertain. *See, e.g., Gooch v. United States*, 297 U.S. 124, 128 (1936). The word "dispute" is already qualified by its own adjective, "any," which gives it a specific, easily ascertainable meaning and thereby it is neither a general word nor uncertain. Indeed, the adjective qualifying "dispute" has the opposite effect from the narrowing that Micropower would have the Court inflict upon word. The Court will not employ *ejusdem generis* in a manner that renders a phrase to mean its own opposite, rendering "any disputes" to mean a smaller subset of disputes.[1] Micropower's first argument fails.[2]

---

[1] The logical opposite of "any disputes" (functionally "all disputes") is "not all disputes", which could be either a smaller subset of disputes or none.

[2] Micropower also put forth similar arguments regarding rules of construction, by which Micropower essentially reiterated the same argument that the language in the choice of law sentence should control the language in the

Micropower's second argument asserts that these claims should not be governed by the forum-selection clause because they are tort claims that relate to actions of the Defendant which were independent of the Purchase Order. (Doc. 8. 17.) Micropower has not cited any cases supporting the idea that these tort claims should not be controlled by the forum-selection clause. The mere fact that these are tort claims, instead of claims involving breach of contract, does not suffice to shelter them from the reach of a forum-selection clause. To the contrary, courts have generally held that when the relationship between the parties is contractual, the creative pleading of alternative, non-contractual claims does not suffice to circumvent the forum-selection clause if the forum selection clause is broad enough to include them. *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983). Plaintiff Micropower asserts that some of their claims are torts that could have been committed independent of a contractual relationship.[3] (Doc. 8. 17-18.) Nevertheless, there is a contract and several of the claims may well hinge on the terms set forth therein. Just because claims can exist independent of a contract does not mean that they are not governed by a contract when one exists. *See Digital Envoy, Inc. v. Google, Inc.*, 319 F.Supp. 2d 1377, 1380 (N.D. Ga. 2004).

"Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." *Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 693 (8th Cir. 1997) (quoting *Berrett v. Life Ins. Co. of the Southwest*, 623 F. Supp. 946, 948–49 (D. Utah 1985)). The forum-selection clause contained in Ametek's Purchase Order states that "[t]he exclusive forum for

---

choice of forum sentence. The Court found these arguments equally unpersuasive for the same reasons stated above.

[3] Micropower asserts that its claims of fraud, interference with business relations, intentional misrepresentation, and misappropriation of trade secrets can be supported outside of any contractual relationship. Micropower, however, neglected to mention its breach of good faith claim which most definitely does rely on a contractual relationship. Micropower seems to want the Court to take notice of the contract when evaluating some of its claims and then forget the contract while examining the rest.

adjudication of any disputes shall be the federal or state courts of the Commonwealth of Pennsylvania…" (Doc. 7-5. 5. ¶ 28.)  The wording of the clause is specific and the intention behind it is clear: Ametek wanted any possible claims between the parties to be brought in Pennsylvania.  The fact that the Purchase Order seems to be a boilerplate form from Ametek does not mean that Micropower did not intend the language and its effect.  Micropower has not asserted any disadvantage in bargaining power, fraud, or duress during the negotiations over the Purchase Order.  Nor has Micropower asserted that, at the time of the purchase, it understood the words in the clause to mean anything different from their plain meaning.[4]

Furthermore, the facts of the case do not suggest that the parties had any intention other than what is expressed in the clause.  Both Micropower and Ametek are sophisticated business entities, fully capable of negotiating the language in a contract.  Consequently, the Court finds that the tort claims fit within the broad meaning of the words "any disputes" and are governed by the forum-selection clause.

**B.  Res Judicata**

While the forum-selection clause dictates that suits between Micropower and Ametek be brought in Pennsylvania, the Southern District of Ohio is a proper forum for a suit between Ecotec and Ametek.  Nevertheless, Ametek asserts that Ecotec's claim of Tortious Interference with Prospective Business Relations is barred by res judicata, also known as claim preclusion.  According to 28 USC § 1738, when a federal court determines the preclusive effect of a state court decision, the federal court shall use that state's standard for res judicata.  *Migra v. Warren*

---

[4] Micropower asserted that it is clear from the language in the clause that the choice of law and choice of forum provisions were only drafted to address defects in the products or their delivery. (Doc. 8. 17.)  To the contrary, it is not clear from the language of the clause that the choice of forum was only intended to be temporary; it is clear from the language of the clause that it was intended to be broad, governing "any disputes."  Regardless, Micropower has not asserted that it understood, at the time Micropower signed it, the meaning of the clause to be something other than the plain meaning conveyed by the text.

*City School Dist.*, 465 U.S. 75, 81 (1984). Ohio courts define res judicata as having four elements: "(1) there was a prior valid judgment on the merits; (2) the second action involve[s] the same parties as the first action; (3) the present action raises claims that were or could have been litigated in the prior action; and (4) both actions arise out of the same transaction or occurrence." *Reasoner v. City of Columbus*, 2005-Ohio-468, ¶ 2 (Ohio Ct. App. 2005) (citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381-382 (Ohio 1995)). The plaintiff bears the burden of proof for showing that res judicata applies. *Id.*

**1. Prior valid judgment on the merits**

In order for res judicata to take effect, the previous decision must be valid and on the merits. A decision is valid as long as the original court had both subject matter jurisdiction and personal jurisdiction over the parties. A judgment may be valid for the sake of res judicata even if the judgment was incorrect. *Federated Dep't Stores, Inc. v. Moite*, 452 U.S. 394, 398 (1981). Thus, incorrectness *per se* is not a defense to the bar of res judicata. A judgment that is wrong on the merits "'can be corrected only by a direct review and not by bringing another action upon the same cause of action.'" *Id.* (citing *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 325 (1927)). Nor does the fact that the original court struck Ecotec's improperly filed memorandum render the decision to be invalid in any way. Neither of the parties contests the subject matter jurisdiction or personal jurisdiction of the Ohio court and consequently this Court accepts the original decision as valid.

Plaintiff Ecotec asserts that the Ohio court's decision to dismiss its counterclaims (now claim) was not on the merits. (Doc. 8. 7.) Specifically, Ecotec asserts that its "arguments were never in front of, or considered by, the Ohio Court" as a result of its memorandum being struck for exceeding the page limit. (Doc. 8. 1-2.) Ecotec does not cite any authority supporting the

11

idea that a decision was not on the merits merely because a judge did not entertain a party's memorandum. To the contrary, even a default judgment due to a failure to respond can be considered to have been on the merits. *See, e.g., Morris v. Jones*, 329 U.S. 545, 550-551 (1947) (citing *Riehle v. Margolies*, 279 U.S. 218 (1929)). A judge deciding a case without reading a party's memorandum has certainly decided the case more on its merits than a judge entering a default judgment. This Court finds, therefore, that the prior decision was on the merits as required for res judicata.

**2. Same parties**

The second element of res judicata requires that "the second action involve[s] the same parties as the first action." *Reasoner*, 2005-Ohio-468, ¶ 2. Because both Ecotec and Ametek were parties in *Ametek v. Keyser*, the Ohio case, this element has been met.

**3. Same claims**

The third element of res judicata requires that "the present action raises claims that were litigated in the prior action." *Reasoner*, 2005-Ohio-468, ¶ 2. In both this case and the Ohio case, *Ametek v. Keyser*, Ecotec has asserted the same claim of Tortious Interference with Potential Business Relationships, and Tortious Interference with Potential Business Relationships is the only claim that Ectoec asserts in the instant action. Neither of the parties contests the idea that the current claim is the same as the one litigated in the Ohio case. Therefore, this element has been met.

**4. Same transaction or occurrence**

The fourth element of res judicata requires that "both actions arise out of the same transaction or occurrence." *Reasoner*, 2005-Ohio-468, ¶ 2. Neither of the parties contests the idea that these claims, the Ohio claim and the current claim, arose out of the same transaction. It

is apparent to the court that the transactions which led to both of these claims are the same transactions and consequently this element has been met. With all four elements of res judicata being present, the Court holds that Ecotec's claim of Tortious Interference with Prospective Business Relations is barred by res judicata.

**C. Rule 11 Sanctions**

Ametek moves for sanctions, via Fed. R. Civ. P. 11(c), asserting that Plaintiffs' claims are legally and factually unfounded. According to Rule 11(b), when an attorney submits a document to the Court, the attorney certifies that, to the best of his/her knowledge, (1) it is not being presented for any improper purpose, (2) the claims are warranted by existing law or "by a nonfrivolous argument for extending" existing law, (3) the factual contentions have, or will likely have, evidentiary support, and (4) the denials of factual contentions are warranted on the evidence. Fed. R. Civ. P. 11(b).

Ametek asserts that Plaintiffs' claims violate requirements 1, 2, and 3 of Rule 11(b). Ametek asserts that, between the lack of any basis for the claims and the Plaintiffs having filed this case in the wrong court[5], it is obvious that Plaintiffs have brought these claims for the improper purposes of harassment and retaliation, in violation of Rule 11(b)(1). (Doc. 10. ¶ 11.) To the contrary, it is not apparent that this suit was brought for the purpose of harassment or retaliation. The Ohio judge, in *Ametek v. Keyser*, told Ecotec that its parent company, Micropower, could bring these claims for itself in its own litigation. While this Court holds that the forum-selection clause dictates that the claims be dismissed, the Plaintiffs' argument that the forum-selection clause did not control was not frivolous. Nor was the argument that Ecotec's claim was not barred by res judicata frivolous.

---

[5] According to the forum-selection clause in the Purchase Order.

13

Ametek also asserts that Plaintiffs' claims violate Rule 11(b)(1) and (2) and merit sanctions because the claims lack legal and factual support.  To the contrary, while this Court is not ruling on the substance of Micropower's claims, it is not apparent at this time that they are so devoid of legal merit as to be frivolous.  Nor are Micropower's claims so severely lacking in factual support as to be frivolous.  Consequently, Ametek's Motion for Rule 11 Sanctions will be denied.

**IV. Conclusion**

Because the forum-selection clause dictates that all suits between Micropower and Ametek be brought in Pennsylvania, Defendant's Motion to Dismiss Micropower's claims on the grounds of failure to state a claim upon which relief can be granted is GRANTED.  Because an Ohio Court of Common Pleas has already entertained and dismissed Ecotec's claim, Defendants' Motion to Dismiss Ecotec's claim with prejudice as barred by res judicata is GRANTED.  Because Plaintiffs' claims are not frivolous, Defendant's Motion for Rule 11 Sanctions is DENIED.

DONE and ORDERED in Dayton, Ohio, this Eighth Day of July, 2013.[6]

                                                s/Thomas M. Rose
                                                _____
                                                THOMAS M. ROSE
                                           UNITED STATES DISTRICT JUDGE

---

[6] The Court acknowledges the valuable contribution and assistance of judicial extern Joseph S. Hess in drafting this opinion.